## Case No. 13,179.

### SOULT v. L'AFRICAINE.

[Bee, 204.] [1]

District Court, D. South Carolina. May 28, 1804.

COURTS—TERRITORIAL JURISDICTION—MARINE LEAGUE FROM SHORE.

Jurisdiction of district courts of the United States ascertained by act of congress of 1794 [1 Stat. 381] to extend to a marine league from the coasts or shores, extending to low water mark. Shoals covered with water are not part of the coast or shore.

[Cited in United States v. New Bedford Bridge, Case No. 15,867; Re Metzger, Id. 9,511; The Hungaria, 41 Fed. 111.]

In admiralty.

This suit is instituted on behalf of the French republic, by their agent of commercial relations [John Francis Soult], to pray restitution of the corvette L'Africaine, her tackle, furniture and apparel; and also compensation for damages sustained by her detention. To the libel filed in this cause, a claim and plea are interposed by William Pindar, commander of the brig Garland, a British privateer, on behalf of himself and crew, stating that this court ought not to have cognizance of the several matters mentioned in the libel, because they did not take place within the jurisdiction of this court; the corvette having been captured on the high and open seas, not within a marine league of any coast or shore, of the state of South Carolina, or of any coast or shore of the United States. From the pleadings and evidence produced, it appeared that the corvette L'Africaine had met with a gale of wind at sea, on the 22d April last, in which she lost her mizzenmast, and sixteen of her crew; and was obliged to throw overboard six of her guns and a quantity of provisions. That, in this situation, she was boarded on the evening of the 3d of May, off the bar of Charleston, by a pilot, who brought her to anchor in six fathoms water, her draught of water being too great to permit his carrying her over the bar, until the next tide. It was proved, that early the next morning, 4th May, the brig Garland, with a ship in company, bore down on the corvette as she lay at anchor; and that, on a gun being fired from the privateer, the corvette struck her colours, was taken into possession, and brought in here, as stated in the libel.

BEE, District Judge. The single question for the consideration of the court is, whether this capture was made within the waters of the United States, or within a marine league of the coasts or shores thereof: it being within those limits only that this court can take cognizance of captures between belligerent powers. In determining this point, it will be proper first to fix precisely the place where this vessel lay at anchor when she was captured, which, from the evidence of pilots,

1 [Reported by Hon. Thomas Bee, District Judge.]

and a chart of the coast produced in court, was done with great accuracy. All the witnesses agree that the corvette was anchored in six fathoms water, on the outside of the Rattlesnake shoal; the nearest land to this shoal appears to be the south end of Long Island. From thence to the spot where the corvette lay at anchor, is, by measurement, nearly six miles. The Rattlesnake shoal, is, itself, four miles from land at least. Some of the witnesses say it is four and a half; others six or seven miles distant from land: and as this shoal lay between the corvette and the nearest land, the distance is ascertained with sufficient precision.

In the case quoted from Robinson's Admiralty Reports, Sir William Scott remarks, that "an exact measurement cannot easily be obtained; but that, in cases of this nature, the court would not willingly act with unfavourable minuteness towards a neutral state, but will be disposed to calculate the distance liberally." On similar principles, I am also disposed to calculate liberally and impartially between the parties; which the position of the Rattlesnake shoal between the nearest land and the vessel enables me to do. As that is acknowledged on all hands to be four miles at least, the question of distance as to the marine league from shore is settled. But it is contended by the counsel for the French republic, that the words "coasts" or "shores" being both found in the act of congress, the jurisdiction ought to extend beyond a marine league from the shore, and ought to be measured from the coast, which includes all the shoals thereon: and this ground was much insisted on.

It was also said that this capture was contrary to the law of nations, the laws of humanity, and the treaty with France. Much time was occupied in reading a number of cases from the law of nations; and reference was made to the correspondence of Mr. Jefferson, when secretary of state, with Messrs. Genet and Hammond, the ministers, respectively, of France and England. It is only necessary for me to remark here, that this correspondence was prior to the 4th June, 1794, when the law of congress was passed. As to the cases adduced, they shew that the line of jurisdiction has varied as the several nations referred to thought fit. I believe the United States are the only power who have fixed, by law, the limits of their maritime jurisdiction. It was argued that this law of congress was passed on the spur of the occasion, and was intended only as an experiment. It may be so. But though the act was originally limited to two years, it was extended afterwards to four years: was finally revived without any limitation, and continues to be, at this day, the law of the land. It is not for this court, exercising a jurisdiction of this nature, to take into consideration the laws of humanity. A vessel, however distressed, may lawfully be captured on the high seas; and the present question must be decided not by the law of humanity, but by the law of congress.

As to the treaty with France, I have examined it, and find that it does not at all relate to a case like the present. The 18th section does indeed mention "sailing along the coasts," but is, nevertheless, totally irrelevant to the question now before us. But, in order to prove that "coasts" and "shores" have a different meaning, reference is made to the 7th section of the act of 1794, where it is said: "And in every case of the capture of a ship or vessel within the jurisdiction or protection of the United States, as above defined," &c. and it is contended that in this clause the word "jurisdiction" relates to coasts, and the word "protection" to shores. In answer to this I would observe, that by recurrence to the 6th section, we shall find that "jurisdiction," as there defined, must relate to captures within the waters of the United States, about which there could be no dispute, and "protection" to the marine league. With this distinction the several clauses are perfectly reconcilable, which they could not, otherwise, be.

Two witnesses were produced to explain the meaning of the word "coast," among mariners. They said the coast included all the shoals, stretching out to any distance whatever; and a critical inquiry was made into the distinction between the expressions "off the coasts" and "on the coasts." But the act by which we must be guided uses neither. It says, "from the coasts;" and this signification differs, in my opinion, from both the others. If the construction contended for should obtain, the marine league would vary with every shoal that could be found. At one time, it would be three miles from the shore or land; at another, ten or twenty miles, according to the extent of the shoal. It would be impossible to fix any boundary of jurisdiction; no two district courts of the United States could determine alike, because the shoals lying off the coast or shore of each would be found to differ in extent; in cases of appeal, the judges of the superior courts would be unnecessarily perplexed; and "the glorious uncertainty of the law" would be established indeed.

Much stress was laid on the vessel's having taken a pilot on board. Had the law of congress not defined the distance, and the evidence fixed it so clearly, I should have been inclined, in a case of this sort, as I have already said, to reject unfavourable minuteness, and to give a liberal construction. A vessel that has taken a pilot near our shores, ought, prima facie, in my opinion, to be protected by our neutral jurisdiction. But, as I am bound by the law as I find it, and not by what it ought to be, I can only express a wish that it may be so amended by the legislature as to embrace, in future, every bona fide case of this sort.

This is said to be a new case, and one of great importance. I view it as such in both

lights, and have, therefore, given it very mature consideration: and after a full investigation of the matter, with reference to consequences both as respects ourselves and foreign powers, I am of opinion that the words in the sixth section of the act of congress "a marine league from the coasts or shores of the United States," must have been intended and must be construed to the land bordering on and washed by the sea, extending to low water mark.

I, therefore, adjudge and decree that the plea in bar filed in this cause is relevant, and that the libel must be dismissed. But, as it appears that the agent of commercial relations of the French republic considered himself bound, in his public capacity to prosecute this suit, I order that each party pay his own costs.